# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| CLARCOR, INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) Case No. 3:10-189 |
| | ) Judge Trauger |
| v. | ) |
| | ) |
| MADISON NATIONAL LIFE | ) |
| INSURANCE CO., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

Pending before the court is a Motion for Summary Judgment (Docket No. 42) filed by the defendant Madison National Life Insurance Co. ("Madison"), to which the plaintiff, Clarcor, Inc., has responded (Docket No. 53), and Madison has filed a reply in support (Docket No. 56). Additionally, Clarcor has filed a Motion for Partial Summary Judgment (Docket No. 39), to which Madison has filed a response (Docket No. 51), Clarcor has filed a reply in support (Docket No. 57), and Madison has filed a sur-reply (Docket No. 60). For the reasons discussed herein, Madison's motion will be granted, and this case will be dismissed. Consistent with this, Clarcor's motion will be denied.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

This is an insurance coverage dispute between Clarcor, the insured, and Madison, the

1

insurer.[1]  Clarcor, which is a filtration services and products company, provided health insurance for its employees through the self-funded "Henderson Hourly Union Medical Plan" (the "Plan"). To insure against major employee health care expenses incurred under the Plan, Clarcor obtained from Madison an Excess Loss Insurance Policy (the "Policy"), which was effective for the period of January 1, 2009 through December 31, 2009.  The Policy covered "eligible expenses" incurred by Clarcor under the Plan from January 1, 2008 to December 31, 2009 and "eligible expenses" paid under the Plan from January 1, 2009 through December 31, 2009.  (Docket No. 55 at 1.) Under the Policy, each "covered person" was subject to a $250,000 deductible; that is, Clarcor was insured by Madison for expenses or "losses" under the Plan in excess of $250,000 per Plan beneficiary, per year.  (*Id.* at 2.)

This dispute centers on Plan eligibility, and the definitions and limitations of certain Policy and Plan terms and provisions are important.  A "covered person" under the Policy is  "an individual eligible for coverage, and covered under the Plan." (*Id.* at 2.)   For present purposes, covered persons largely consisted of Clarcor employees and their dependents.  "Losses" or "eligible expenses" under the Policy do not include "any payment [by Clarcor] which does not strictly comply with the provisions of the Plan," that has been "received and accepted" by Madison. (*Id*.)  That is, Madison agreed to cover Clarcor's excess Plan losses, but only if those

---

[1]Unless otherwise noted, the facts are drawn from the parties' statements of material facts (Docket Nos. 52, 54, and 55) and related affidavits and exhibits.  Although facts are drawn from submissions made by both parties, on a motion for summary judgment, all inferences are drawn in the light most favorable to the non-moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S 574, 586 (1986); *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).  For purposes of judicial economy, the court will not discuss the facts that relate to issues that the court ultimately need not reach, such as whether certain claims for reimbursement were timely submitted.

losses were covered under the Plan that Madison had reviewed and approved.

Under the section titled "Who Is Eligible," the Plan states that "you are eligible to participate in this plan if you are a regularly assigned, full-time employee of Clarcor for at least 3 consecutive months and are regularly scheduled to work a minimum of 40 hours per week." (Docket No. 41 Ex. 2 at 14.)  For employees, the Plan states that "coverage ends the earliest of: the date your employment with Clarcor ends; the date contributions cease; the date you are no longer eligible to participate in this plan; the date you voluntarily terminate coverage during open enrollment or special enrollment; or the date this plan terminates." (*Id*. at 17.)

Another section of the Plan titled "General Enrollment Requirements and Election Information" allows beneficiaries to make "enrollments elections" or changes to their Plan coverage if the beneficiary has a "change in status." (*Id.* at 15.)   This change in enrollment must take place within 30 days of the "qualifying" change in status.  (*Id*.)   A series of qualifying changes, including termination, birth, death, and reduction in hours are listed.  (*Id*.)  This section further provides that the change in enrollment must be "consistent with" the change in status and be tied to some gain or loss in eligibility for a beneficiary.  (*Id*.)  "In other words . . . the election change must correspond with the effect on coverage." (*Id*.)

The Plan also has Family and Medical Leave Act (FMLA) and COBRA provisions.  The FMLA provision, in essence, provides that eligibility under the Plan will continue for the duration of leave, as long as the coverage continues to be paid for during that time.  (*Id.* at 18.) The COBRA provisions state that, consistent with federal law, when a "qualifying event" that would otherwise end the coverage occurs, "the plan offers optional continuation coverage." (Docket No. 41 Ex. 4 at 6-9.)  A series of "qualifying events," including termination of

3

employment and "reduction in hours," are provided. (*Id.*)  If a beneficiary elects to receive COBRA coverage, that individual, in exchange for paying the premiums on the Plan, is allowed to remain covered by the Plan for a set period of time even through he or she would otherwise no longer be eligible for Plan coverage due to the "qualifying event." (*Id.*)

This specific dispute arose because one of Clarcor's employees, I.K., incurred a considerable amount of health care costs in late 2007 and 2008. The last day I.K. was "regularly scheduled" to work at Clarcor was October 20, 2007. (Docket No. 55 at 5.) At this time, I.K. was placed on FMLA leave, which continued until January 12, 2008. I.K. did not return to work after the expiration of her FMLA leave and was not offered COBRA coverage, but was, instead, placed on short-term disability. While on short-term disability, Clarcor continued to make benefit deductions from I.K's compensation for health insurance coverage and continued to submit I.K.'s name to Madison as one of the beneficiaries of the Plan. I.K.'s employment was terminated on June 23, 2008, and, the next day, for the first time, she was offered COBRA coverage by Clarcor.

I.K.'s health care costs during the relevant time period were well in excess of $250,000 and, in June 2009, Clarcor submitted a claim to Madison under the Policy. Madison raised concerns about coverage for Clarcor's expenses, suggesting that I.K.'s move to short-term disability had rendered her ineligible under the Plan. In discussions between Clarcor and Madison regarding this issue, Clarcor confirmed that it has a "corporate practice" of continuing benefit deductions for employees on short-term disability. (Docket No. 55 at 6.) On November 6, 2009, Madison, through its Policy administrator, informed Clarcor that it was denying Clarcor's request for reimbursement for I.K's expenses incurred after January 12, 2008, that is,

4

after I.K. came off of FMLA leave and went onto short-term disability.. (Docket No. 53 at 2.).

On February 24, 2010, Clarcor filed its Complaint, seeking a declaratory judgment that Clarcor's "excess" expenses for I.K. were covered under the Plan and reimbursable under the Policy and, on the same theory, asserting a claim for breach of contract against Madison. (Docket No. 1.)

## ANALYSIS

Madison has moved for summary judgment on the plaintiff's claims, arguing, among other things, that I.K. was not eligible under the Plan during the relevant time period. (Docket No. 42.) Clarcor has also moved for partial summary judgment, seeking a judgment as a matter of law on its declaratory judgment claim.[2]

**I.      Summary Judgment Standard**

Federal Rule of Civil Procedure 56(c) requires the court to grant a motion for summary judgment if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." If a moving party shows that there is no genuine issue of material fact on the essential elements of the claim, then the burden shifts to the non-moving party to provide evidence beyond the pleadings "set[ting] forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009); *see also*

---

[2]The primary argument in the plaintiff's motion is that a certain exclusion to coverage under the Policy does not apply. (See Docket No. at 5-9.) As explained by the case law discussed below, because the court determines that I.K was not eligible under the Plan, it is not necessary to address the applicability of any exclusions to coverage. The court has also considered the eligibility arguments contained in Clarcor's motion, which are very similar to those advanced in response to Madison's motion. (See Docket No. 40 at 8-9; Docket No. 57 at 2-4.)

5

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "In evaluating the evidence, the court must draw all inferences in the light most favorable to the non-moving party." *Moldowan*, 578 F.3d at 374.

"'[T]he judge's function is not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). But "the mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient," and the non-moving party's proof must be more than "merely colorable." *Anderson*, 477 U.S. at 249, 252. An issue of fact is "genuine" only if a reasonable jury could find for the non-moving party. *Moldowan*, 578 F.3d at 374 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## II. Madison's Motion for Summary Judgment

The basic law is undisputed. The parties' insurance agreement is construed, just as any other contractual agreement, "so as to give effect to the intention and express language of the parties." *Blaylock & Brown Const. Co., Inc. v. AIU Ins. Co.*, 796 S.W.2d 146, 149 (Tenn. Ct. App. 1990). Even though the terms of such an agreement may be "technical and complex," where the plain language is not ambiguous, the court has "the duty . . . to apply to the words used their usual, natural and ordinary meaning." *Id*. Additionally, it is the initial burden of the insured to sufficiently establish that it was covered under the relevant insurance agreement, and that it is entitled to the benefits it seeks. *Blaine Const. Corp. v. Ins. Corp. of N.A.*, 171 F.3d 343, 349 (6th Cir. 1999). Once the insured meets this burden, the insurer may attempt to offer defenses or exclusions to coverage. *Id*.

Madison's primary argument is that Clarcor cannot establish I.K.'s eligibility under the

6

Plan, and, therefore, Clarcor cannot meet its initial burden of showing that its claim is reimbursable under the Policy. (Docket No. 43 at 9.) Indeed, Madison points out, the only Clarcor employees "eligible" for coverage under the plain terms of the Plan are those who "are regularly assigned, full-time employees of Clarcor for at least 3 consecutive months and are regularly scheduled to work a minimum of 40 hours per week," those on FMLA leave, or those with optional COBRA continuation coverage. (*Id*. at 9-10.) Here, once I.K.'s FMLA leave ended, she did not return to work or get on COBRA but was placed on short-term disability, which, in Madison's view, removes her from eligibility under the Plan. (*Id*.) Clarcor could have avoided this termination of coverage, Madison implies, if it had offered I.K. COBRA coverage as soon as she came off FMLA leave, as her "reduction in hours" would have been a sufficient "qualifying event" to spark COBRA eligibility. (*Id*. at 10.) It is Madison's position that the Plan simply does not allow employees who are not regularly working to remain eligible under the Plan, unless those employees are shielded by the FMLA or COBRA. (*Id*.)

In response, Clarcor argues that I.K. remained "eligible" even after the end of her FMLA leave. (Docket No. 53 at 5.) As a primary matter, Clarcor maintains that the "Who is Eligible" section of the Plan only defines who is *initially* eligible for coverage under the Plan; that is, in order to get "on board," an employee would have to work at Clarcor for three months and be full-time. (*Id*.) Once this initial eligibility is established, Clarcor contends, the Plan "recognizes several changes in employment status which result in an employee not being available to work, yet the employee remains eligible for coverage" under the Plan. (*Id*. at 5-6.)

In support of this interpretation – that moving from full-time employment to short-term disability without FMLA or COBRA protection does not result in a loss of eligibility – Clarcor

7

points to the provision in the "General Enrollment Requirements and Election Information" section discussed above, which, again, states that, if an employee has a "qualifying change in [his or her] status," that employee "may change [his or her] enrollment decision." (*Id*. at 6; Docket No. 41 Ex. 2 at 15.) This Plan provision then lists several events that constitute "qualifying changes," including termination, divorce, birth, death, and a "reduction in hours." (*Id*.) Taking this provision a step further, Clarcor argues that, because an employee with reduced hours (or other qualifying event) is permitted – but not required – to change his or her enrollment under the Plan, it must be the case that such an employee does not lose eligibility in light of the qualifying event. (Docket No. 53 at 6.) Here, I.K. simply "chose not to change her enrollment status" under the Plan despite the "qualifying event" and continued to pay the premium on the Plan. (*Id*.)

In its reply, Madison argues that (1) there is no indication that the "Who Is Eligible" provision only defines initial, as opposed to general, eligibility, and (2) Clarcor overlooked the key limiting provisions in the "General Enrollment Requirements and Election Information" section, which are that the change in "enrollment election must be consistent with [the] change in status" and that "the election change must correspond with the effect on coverage." (Docket No. 56 at 2-5.) Therefore, Madison contends, one who has a "qualifying change in status" (whether it be a marriage, divorce, death, birth, or change in employment status) is free to then make a change to his enrollment information to reflect that qualifying change. (*Id*.) In this case, then, I.K., with her "qualifying change" being a "reduction in hours," was permitted to sign up for COBRA coverage. (*Id*.) As Madison explains this provision, "employees who lose coverage due to a reduction in hours, etc. could elect COBRA coverage or retirement benefits, but would

8

not be required to do so. Thus, the 'General Enrollment' section does not expressly or implicitly create any right to coverage not otherwise listed in the Plan." (*Id*. at 5.)

Madison's construction and application of the Plan to this set of facts is sound. Under the plain terms of the Plan, an employee is generally "eligible" under the Plan if she is a "regularly assigned, full-time employee," working at least 40 hours per week. Here, there is no question that, up until September 20, 2007, I.K. was an "eligible" employee under the Plan. After September 20, I.K. was removed from the schedule and was no longer a full-time, scheduled employee. Again, under the plain terms of the Plan, this action would "end" her coverage, absent FMLA leave, which she took. However, once her FMLA leave ended on January 12, 2008, Madison appears to be entirely correct that the only way to preserve I.K.'s coverage in light of these events was to offer I.K. COBRA coverage as soon as I.K.'s FMLA leave concluded, which Clarcor did not do.

Clarcor's attempts to avoid the plain language of the Plan are unavailing. First, the court finds little suggestion that the "Who Is Eligible" section concerns initial – as opposed to general – eligibility. Most notably, the Plan contains a separate provision called "When Coverage Begins," which states that, for active employees, coverage begins "the first day marking 3 consecutive months of active employment." (Docket No. 43 Ex. 3 at 14.) This section appears to establish initial eligibility, and the "Who Is Eligible" section, which contains going forward requirements regarding hours and scheduling, establishes general eligibility.

Second, as noted above, Clarcor ignores key language in the "General Requirements and Enrollment Information" provision. While that provision states that employees "may" make changes to their enrollment following a qualifying change, the provision dictates that the

9

beneficiary must link the enrollment change to the qualifying event. That is, if there is a birth of a dependent, the beneficiary may add that dependent. Or, as here, if there is a "reduction in hours" or a termination, the beneficiary may sign up for COBRA coverage. Given the other language in the Plan that clearly limits eligibility and this more logical interpretation of this section, Clarcor's argument that this provision somehow allows beneficiaries with qualifying events such as termination to choose to remain covered by their employer's plan, apparently indefinity, cannot be correct.[3]

Therefore, the court concludes that I.K. was not an "eligible" employee after January 12, 2008 and Madison's denial of coverage was entirely consistent with the terms of the Policy, which dictate that Madison is not obligated to reimburse Clarcor for losses not covered by the Plan it had accepted and reviewed. Therefore, Madison's Motion for Summary Judgment (Docket No. 42) is **GRANTED**, Clarcor's Partial Motion for Summary Judgment (Docket No. 39) is **DENIED**, and this case is **DISMISSED**.

It is so Ordered.

---

[3]Clarcor also points to the Policy's "Schedule of Excess Loss Insurance," which indicates that the parties, through checking a box on a form, waived the "actively at work" requirement for coverage. (Docket No. 53 at 7.) No further information appears to be in the record as to what this waiver means. While the schedule does indicate that the parties waived the "actively at work" requirement, this action is not inconsistent with the court's interpretation of the Policy and Plan. That is, it is entirely reasonable to conclude that this box was checked as a way to allow Clarcor to have Policy coverage for its COBRA and FMLA employees (along with retirees and dependents). (See Docket No. 41 Ex. 1 at 4.) Additionally, Clarcor points to the claim form used for submission of a claim, which has a section asking the claimant "how eligibility was maintained" and provides a space for the claimant to indicate that coverage was maintained during a "leave of absence," in addition to through FMLA leave or COBRA. (Docket No. 53 at 7.) This document is of little help to Clarcor. Rather, it simply appears to be the standard form used by Madison's policy administrator to collect claim information, and, therefore, it suggests nothing about what the specific parameters of the Policy and Plan at issue here were. (Docket No. 54 Ex. 1 at 2.)

Enter this 11th day of July 2011.

_____
ALETA A. TRAUGER
U.S. District Court Judge