UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CLARCOR, INC. ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 3:10-189 |
| v. ) | Judge Trauger |
| ) | |
| MADISON NATIONAL LIFE ) | |
| INSURANCE CO., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

Pending before the court is a Motion to Alter or Amend Judgment (Docket No. 65) filed by the plaintiff, Clarcor, Inc., to which the defendant, Madison National Life Insurance Co. ("Madison"), has responded (Docket Nos. 67 and 69), and Clarcor has filed a reply in support (Docket No. 72). For the reasons discussed herein, Clarcor's motion will be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

On July 11, 2011, the court issued a Memorandum and Order that granted Madison's Motion for Summary Judgment and dismissed this case. (Docket No. 63.) Consistent with this, the court also denied Clarcor's Motion for Partial Summary Judgment. (*See id*.) In that Memorandum and Order, the court summarized the factual background of this insurance coverage dispute:

> Clarcor, which is a filtration services and products company, provided health insurance for its employees through the self-funded "Henderson Hourly Union Medical Plan" (the "Plan"). To insure against major employee health care expenses incurred under the Plan, Clarcor obtained from Madison an Excess Loss Insurance Policy (the "Policy"), which

1

was effective for the period of January 1, 2009 through December 31, 2009. The Policy covered "eligible expenses" incurred by Clarcor under the Plan from January 1, 2008 to December 31, 2009 and "eligible expenses" paid under the Plan from January 1, 2009 through December 31, 2009. Under the Policy, each "covered person" was subject to a $250,000 deductible; that is, Clarcor was insured by Madison for expenses or "losses" under the Plan in excess of $250,000 per Plan beneficiary, per year. . . .

A "covered person" under the Policy is "an individual eligible for coverage, and covered under the Plan." . . . "Losses" or "eligible expenses" under the Policy do not include "any payment [by Clarcor] which does not strictly comply with the provisions of the Plan," that has been "received and accepted" by Madison. . . .

Under the section titled "Who Is Eligible," the Plan states that "you are eligible to participate in this plan if you are a regularly assigned, full-time employee of Clarcor for at least 3 consecutive months and are regularly scheduled to work a minimum of 40 hours per week." For employees, the Plan states that "coverage ends the earliest of: the date your employment with Clarcor ends; the date contributions cease; the date you are no longer eligible to participate in this plan; the date you voluntarily terminate coverage during open enrollment or special enrollment; or the date this plan terminates." . . .

The Plan also has Family and Medical Leave Act (FMLA) and COBRA provisions. The FMLA provision, in essence, provides that eligibility under the Plan will continue for the duration of leave, as long as the coverage continues to be paid for during that time. The COBRA provisions state that, consistent with federal law, when a "qualifying event" that would otherwise end the coverage occurs, "the plan offers optional continuation coverage." A series of "qualifying events," including termination of employment and "reduction in hours," are provided. If a beneficiary elects to receive COBRA coverage, that individual, in exchange for paying the premiums on the Plan, is allowed to remain covered by the Plan for a set period of time even through he or she would otherwise no longer be eligible for Plan coverage due to the "qualifying event."

This specific dispute arose because one of Clarcor's employees, I.K., incurred a considerable amount of health care costs in late 2007 and 2008. The last day I.K. was "regularly scheduled" to work at Clarcor was October 20, 2007. At this time, I.K. was placed on FMLA leave, which continued until January 12, 2008. I.K. did not return to work after the expiration of her FMLA leave and was not offered COBRA coverage, but was, instead, placed on short-term disability. While on short-term disability, Clarcor continued to make benefit deductions from I.K's compensation for health insurance coverage and continued to submit I.K.'s name to Madison as one of the beneficiaries of the Plan. I.K.'s employment was terminated on June 23, 2008, and, the next day, for the first time, she was offered COBRA coverage by Clarcor.

I.K.'s health care costs during the relevant time period were well in excess of $250,000 and, in June 2009, Clarcor submitted a claim to Madison under the Policy. Madison

2

raised concerns about coverage for Clarcor's expenses, suggesting that I.K.'s move to short-term disability had rendered her ineligible under the Plan. . . . On November 6, 2009, Madison, through its Policy administrator, informed Clarcor that it was denying Clarcor's request for reimbursement for I.K's expenses incurred after January 12, 2008, that is, after I.K. came off of FMLA leave and went onto short-term disability.

On February 24, 2010, Clarcor filed its Complaint, seeking a declaratory judgment that Clarcor's "excess" expenses for I.K. were covered under the Plan and reimbursable under the Policy and, on the same theory, asserting a claim for breach of contract against Madison.
(Docket No. 63 at 2-5)(internal citations omitted).

In the Memorandum and Order, the court determined that I.K. had lost "eligibility" under the Plan. (*See id.* at 9-10.) The court determined that this loss of eligibility occurred when I.K.'s coverage "ended" under the Plan terms when she did not return to work and was not placed on COBRA coverage following the end of her FMLA leave. (*Id*. at 9.) As the court stated, "Madison appears to be entirely correct that," under the plain language of the relevant Plan and Policy documents, "the only way to preserve I.K's coverage in light of the[] events [in this case] was to offer I.K. COBRA coverage as soon as I.K.'s FMLA leave concluded, which Clarcor did not do." (*Id*.)

As the court determined that I.K. was not "eligible" under the Plan, it was not necessary for the court to reach the parties' other arguments, including whether any "exclusions" to coverage were applicable. (*See id.* at 5; *see also Blaine Const. Corp. v. Ins. Corp. of N.A.*, 171 F.3d 343, 349 (6th Cir. 1999), which held that it is the initial burden of the insured to sufficiently establish that it was covered under the relevant insurance agreement, and that it is entitled to the benefits it seeks. If the insured meets this burden, the insurer may attempt to offer defenses or exclusions to coverage).

On August 5, 2011, Clarcor filed the pending motion to "alter the judgment." (Docket

3

No. 65.)

## ANALYSIS

I.      **Standard of Review**

Federal Rule of Civil Procedure 59(e) states that "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). The district court may grant a motion to alter or amend (or reconsider) a judgment under Fed. R. Civ. P. 59(e) for any of four reasons: (1) because of an intervening change in controlling law; (2) newly discovered evidence; (3) to correct a clear error of law; or (4) to prevent manifest injustice. *Abnet v. Unifab Corp.*, 2009 WL 232998, *3 (6th Cir. Feb. 3, 2009).

In discussing the movant's substantial burden under Rule 59(e), the Sixth Circuit has held that a "motion under Rule 59(e) must either clearly establish a manifest error of law or must present newly discovered evidence." *Roger Miller Music, Inc. v. Sony/ATV Publishing, LLC*, 477 F.3d 383, 395 (6th Cir. 2007) (internal quotation omitted). The Rule 59(e) vehicle does not exist to provide the movant with a second opportunity to make its previous argument, that is, a Rule 59(e) motion "is not an opportunity to re-argue a case." *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998).

In light of the "narrow purposes" of the motion and the judicial system's interests in the finality of judgments and in the conservation of judicial resources, Rule 59(e) motions "typically are denied." *Miller v. Bell*, 655 F. Supp.2d 838, 844 (E.D. Tenn. 2009)(internal quotation omitted). Here, the plaintiff seeks reconsideration, claiming that the court made a "clear error" of law that will cause "manifest injustice." (Docket No. 66 at 3.)

II.     **The Motion to Alter or Amend**

4

### A. Clarcor's Argument

The premise of Clarcor's motion is that the court's July 11, 2011 Memorandum and Order only answered part of the question raised by this case. That is, while "Clarcor disagrees with the Court's ruling . . . that I.K. was not eligible under the Plan during the time she was on disability leave between her FMLA coverage and her COBRA continuation coverage," that finding is not the "focus" of the motion. (*Id.* at 2.) Rather, Clarcor argues that the court should have made that ruling and then turned to the issue of whether Clarcor is "entitled to coverage for medical expenses incurred by I.K. during her COBRA continuation coverage," which Clarcor claims she was. (*Id*. at 2-4.) Indeed, Clarcor maintains, the court explicitly held that "expenses incurred during the COBRA continuation period are clearly covered under the Plan." (*Id*.)

Once the court concluded that Clarcor was covered for the COBRA period, the court then should have turned to the applicability of Policy Exclusion No. 9, which "was the subject of Clarcor's Motion for Partial Summary Judgment." (*Id*. at 3.) Indeed, one of the bases asserted by Madison for denying Clarcor's claim was Exclusion No. 9, which excludes from Policy coverage "expenses for any COBRA continuee or retiree whose continuation of coverage was not offered in a timely manner or according to COBRA regulations." (*See* Docket No. 41 Ex. A at 5.) Clarcor has previously asserted, as it does here, that it offered I.K. COBRA coverage in a manner that was "timely" and according to regulation. (Docket No. 66 at 5.)

Turning to the COBRA regulations, Clarcor points out that it was only required to offer COBRA coverage once a "qualifying event," which "but for the continuation of coverage [under COBRA] would result in the loss of coverage," had occurred. (*Id*. at 6-7 citing 29 U.S.C. § 1163.) Clarcor then goes on to argue that the "qualifying event" did not occur until I.K. was

5

terminated on June 23, 2008; that is, I.K's transition from FMLA to short-term disability in January 2008 did not constitute a "qualifying event" because, as far as Clarcor was concerned, "I.K. continued to be covered under the Plan." (*Id*. at 7.) Clarcor concedes that its conclusion that I.K. was still covered under the Plan is inconsistent with Madison's determination of Plan eligibility in November 2009 and with the court's determination of Plan eligibility in the July 11, 2011 Memorandum and Order.[1] (*Id*.)

In terms of relief, Clarcor asserts that the court should amend the judgment dismissing this case and "enter judgment in favor of Clarcor and against Madison in the amount of $138,000." (*Id*. at 11.) Interestingly, Clarcor arrives at this figure by accepting "Madison's position [] that Clarcor should have offered I.K. COBRA continuation coverage at the conclusion of her FMLA leave" in January 2008. (*Id.* at 4.) If Clarcor had done so, "then I.K.'s [statutorily mandated 18-month] COBRA continuation coverage would have ended on July 20, 2009, and [Madison] would owe Clarcor $138,000, which is the amount of medical expenses incurred by I.K. and paid for by Clarcor under the Plan in excess of the $250,000 deductible through July 20, 2009." (*Id.*)

---

[1] As it did in prior briefing, Clarcor cites to *Jordan v. Tyson Foods, Inc.*, 257 Fed. Appx. 972, 979 (6th Cir. 2007) as supporting its position and attempts to distinguish *The Majestic Star Casino v. Trustmark Ins. Co.*, 667 F. Supp.2d 809 (N.D. Ill. 2009). *Tyson Foods* adds little because, there, the Sixth Circuit simply recounted that coming off FMLA leave would constitute a "qualifying event" only if the employee "would lose health coverage in the absence of COBRA continuance coverage." 257 Fed. Appx. at 980. Clarcor claims that I.K. did not lose Plan eligibility when she came off FMLA leave, and the court concluded that she did under the plain language of the Plan. In *Majestic Star*, the court concluded that, under the language of the relevant plan, a leave of absence was a COBRA "qualifying event" sufficient to "start the clock" for COBRA purposes, and Clarcor's argument here is essentially that its Plan and the plan at issue in that case contain different language. (Docket No. 66 at 9.) None of this has any substantive bearing on whether, under the terms of the Plan, I.K. lost eligibility when she was moved from FMLA to disability leave.

6

### B. Madison's Position

In response, Madison maintains that Clarcor is impermissibly re-arguing the same points and law that it raised in initial briefing and that it has not come forward with any basis for Rule 59(e) relief. (Docket No. 67 at 3.) Madison asserts that, despite this extra round of briefing, Clarcor is still unable "to establish eligibility for I.K. after her FMLA leave under the terms of the Plan," and, therefore, Clarcor has failed to meet its initial burden to show eligibility and no further exploration is necessary. (Docket No. 69 at 3-4.)

Madison offers a few additional reasons for denying Clarcor's motion. First, the "alternative relief" of $138,000 that Clarcor seeks here was not properly pled, as it was raised, for the first time, in Clarcor's reply in support of its Motion for Partial Summary Judgment. (*Id.* at 5; *see also* Docket No. 1 at 4-5, in which the plaintiff sought $387,500, which was the total amount over $250,000 that it paid for I.K.'s health care). Second, and related to the argument above, Madison asserts that Clarcor has offered "no contractual basis" by which I.K.'s eligibility survived "for six months until the date she was offered COBRA"; that is, Clarcor offers no way to surmount the "gap in eligibility" that its conduct created. (*Id.*) Third, the $138,000 is not the proper valuation; Clarcor should have submitted evidence of "what benefits it would be entitled to under the Policy, if any, once I.K. [actually] went on COBRA," not the benefits ($138,000) Clarcor would have supposedly been entitled to if it had properly put I.K. on COBRA coverage

7

in January 2008.[2] [3] (*Id*.)

    **C.    Resolution**

Through its motion here, Clarcor is essentially asserting an alternative claim for relief. That is, even if I.K. was not eligible under the Plan during the period that she was on short-term disability, I.K. was eligible during the period that she was on COBRA, as there is no dispute that the Plan, generally, offered COBRA coverage.

As Madison identified, there are several problems with this argument. First, this claim for alternative relief was never pled. Clarcor's Complaint seeks the full amount that it paid for I.K.'s care (over the $250,000 deductible) and makes no mention of an alternative claim for the money that it paid while I.K. was on COBRA. (Docket No. 1 at 4-5.) Clarcor first raised this alternative claim for relief, somewhat vaguely, at the end of its reply in support of its Motion for Partial Summary Judgment and now fully develops the argument here, after the case has been dismissed.[4] (*See* Docket No. 57 at 4.) As this alternative claim, which relies on a different

---

[2] While it is not necessary to reach this issue, the court fully concurs with Madison on this point. For purposes of this motion, I.K. was not "eligible" pursuant to COBRA until, at the earliest, June 24, 2008, when she was offered COBRA. If COBRA coverage "kicked in" on that date, as Clarcor argues here, that is the only logical date from which to begin calculating health care costs.

[3] Finally, Madison launches into a lengthy and admittedly "moot" discussion regarding Medicare, asserting that, under federal law, its obligations under the Policy would have been "limited to benefits payable secondary to Medicare" once I.K. went on COBRA, and, therefore, "it is not clear that any stop loss benefits would have been owed" after the deductible and Medicare benefits were applied. (Docket No. 69 at 5-6.) This dispute over the primacy of Medicare coverage is the primary issue addressed in Clarcor's reply, and, as should be clear from the discussion herein, not pertinent to the resolution of this motion. (Docket No. 72 at 2-6.)

[4] Clarcor maintains that it raised this "alternative claim" with Madison in discovery, which is obviously unhelpful. (Docket No. 72 at 6.)

theory for relief, was never properly pled, it would not be appropriate for the court to grant relief to Clarcor based upon it. *See Summe v. Kenton County Clerk's Office*, 604 F.3d 257, 271 (6th Cir. 2010).

Even setting this point aside, Clarcor continues to ignore the plain language of the Plan, which states that "coverage *ends* . . . the date you are no longer eligible to participate in this plan." (Docket No. 41 Ex. B at 12.)(emphasis added)  That is, (disagreeing with but) accepting the court's ruling that I.K. lost eligibility once she was not placed on COBRA coverage in January 2008, Clarcor offers no explanation for how I.K. regained her eligibility.

Moreover, Clarcor's briefing leaves the court with the firm conviction that, even if eligibility were not an issue, Madison would be entitled to summary judgment in light of Exclusion No. 9.[5]  Again, that provision of the Policy requires that – in order for Madison to cover the claim – COBRA coverage must be offered by Clarcor to its employee in a "timely" manner following the COBRA "qualifying event." (Docket No. 41 Ex. A at 5.)  Again, the court has determined that the termination of FMLA leave was a COBRA "qualifying event" because it resulted in the end of coverage under the terms of the Plan.  As COBRA coverage was not offered for five months after that event, the court concludes that, even if "eligibility" were not an issue, the offering of COBRA coverage was not "timely," and Exclusion No. 9 would apply to relieve Madison of its COBRA coverage obligations.  This notion that a five-month delay was not "timely" is consistent with common sense and the Plan terms, which generally afford between 30 and 60 days for a party to make an election or respond to a development that would influence coverage.  (*See e.g.* Docket No. 41 Ex. B at 55-56.)

---

[5]Madison moved for summary judgment on this alternative ground.  (Docket No. 43 at 2.)

It is clear that Clarcor has failed to meet its considerable burden to show that the court made a "clear error" of law or that "manifest injustice" will result from the court's ruling. Rather, the court remains convinced that I.K. was not "eligible" for coverage under the Plan after she went off FMLA leave and was not promptly offered COBRA coverage. Therefore, Clarcor's Motion to Alter or Amend Judgment (Docket No. 65) is **DENIED**.

It is so Ordered.

Enter this 2nd day of September 2011.

ALETA A. TRAUGER
U.S. District Court Judge